Our next argument for appeal is Ironburg Inventions v. Valve Corporation. This is docket number 24-2088. Whenever you're ready, please begin. Could you state your name for the record? Yes. Pat Lugin on behalf of the appellant, Valve Corporation. Morning Your Honors. May it please the Court. In the previous opinion in this case, this Court found that Ironburg had the burden of proving what a skilled searcher conducting a diligent search could have reasonably expected to discover. And last time around, Ironburg's only evidence was the fact that Collective Minds Gaming, or CMG for short, had filed an IPR petition. Following remand, there is no new evidence relating to Collective Minds. Valve had produced evidence of its 2014 search by Landon IP that did not find the Kotkin, Koji, or Raymond references. And on remand, Valve produced an additional declaration from yet another person who was involved in that 2014 search that further corroborates that the Landon IP search did not find those three references and also further corroborates that the Landon IP search was a diligent search. What do you think is the standard of review here for the District Court's estoppel decision? Well I think there are issues of law here and I think there are also with de novo review and there may also be some issues of fact that would be clear error. What would be the fact issues? Well it's often, I don't know if this Court has actually said it, but other courts have said that whether the fact of whether or not someone has met the skilled searcher standard is a fact question. They've certainly said it's fact intensive. And so that may be a fact issue. And there are a number of... Isn't that the whole inquiry? Whether a skilled searcher would have discovered the reference? I think there are some other inquiries as well. I do think that's an important inquiry. Another inquiry is what does it mean to discover a reference? That's like a component of the skilled searcher standard. Is that legal or fact? I think that would be a legal question. What is that standard? I think another legal question before us is whether the mandate was violated or not. That's de novo review. Speaking of the discovery standard, I think there's a lot of uncertainty in the District Courts about what would satisfy that standard and what wouldn't. In fact, the Geigtech case actually states that the Federal Circuit has not refined exactly what facts and circumstances qualify as a skilled searcher conducting a diligent search. It seems like your view is you want us to say that discoverable is satisfied if you just do some type of, I suppose, reasonable search terms in the right database and that's enough to make it. Actually, I guess that's their view. You think for it to be discoverable, you have to find it, you have to read it, you have to understand it. Isn't that right? At some level. You have to understand that it has some potential relevance to the subject claims. If we were to, and I think you've already said you think this is a question of law, how would you have us articulate what the legal rule is for District Courts to follow in order to find a reference to be discoverable? Well, the one that we found in the District Court cases so far that made sense to us is the Palomar Standard where they say that discovering a reference requires reading it and understanding its relevance in the context of the claim. Does that really mean, like if you returned, I don't know, thousands of references, you have to read and understand all of them and figure out their relevance to the claims you're challenging in order to be stopped? No, I think if there's thousands of references and you have to read them all, I think that's a scorched earth search or close to it. I think what you need to do is you can use classifications, you can use keyword searching, but you need to narrow it down to a manageable number that you can review. And then those ones that are the smaller set can be reviewed and those are the ones that are found and discovered. But even professional prior art searchers, they don't sit down with a cup of coffee and read each individual reference that they located from word one to the final page. They're quickly scanning individual references. So that's why I'm following up on Judge Stark's question as to what is really the scope and meaning of reading and understanding each and every reference that is found. It couldn't possibly mean reading it like reading a newspaper front to back. No, not at all. Does it actually even have to be reading? I mean, doesn't it just have to be you've limited your search to a universe that a searcher would normally be expected to find that reference? Clearly, if you return a search world of 10,000 or 1,000, even 500, I don't see how that's discoverable. Because you wouldn't expect anybody to sit down. But if you return a search world of 20, then aren't all those considered to have been discovered? Because that's a small enough number that you would expect a competent or a skilled searcher to be able to look through them quickly and recognize their relevance or not. Yeah, agreed. And I also agree. OK, but here's my problem. How do we draw those lines and create a legal rule that says 20 is enough, but 500 is too much? And then we start narrowing that. Is 100 too much, or is it enough? I mean, we have to have some kind of standard. And I understand that's all going to be back-faced to a certain extent. But how do we craft, again, the legal rule that's going to guide the district courts on that? Well, and I can tell from your questions and from the briefing that that Palomar standard can be read many ways, like a deep, voluminous reading or just a scan. And what we have in mind is, let's just say you have a claim that has three elements, A, B, and C. And the searcher would be quickly scanning each reference once it's down to a manageable number to see. I mean, surely the searcher would want to see that there was either an A, a B, or a C or something like it in that reference. And then, OK, that one looks good. This one seems out in left field. So that's the kind of reading, scanning, and understanding, and finding some sort of potential relevance to the claim that we think would be appropriate. But by contrast, Your Honor, this is the Cardinal IP search report, these two volumes, volumes two and three of the appendix. Well over 20,000 references, and those are families. So it could be in the hundreds of thousands of references. And I mean, if this court hasn't, like I mentioned, if this court hasn't provided guidance to the district courts about what satisfies the standard, I don't think this is the poster child case for it, where you've got 20,000 references, and there's a similar problem, that's the Cardinal IP search, with the way the district court interpreted the Landon IP search. Also, a pure classification search of unknown size. And for the- Are you asking us, in this case, to set what the standard is, at least for discoverability? Or you're saying we don't need to do that because the district court so clearly erred here? We think you, we would appreciate if you did set the standard in this case. We asked for that in our briefing, and we cited the Palomar standard, but I agree with you all that it needs to be refined somewhat. Okay, so if we are going to set the standard here, you would have us read the word read as part of the Palomar standard, not to be literally read word for word. It's just something akin to a quick scan to identify at least one element of the challenge claim, something like that? Yeah, maybe not those exact words, but a scan sufficient to identify some potential relevance to the claim. And then, what the estoppel actually doesn't apply necessarily to just references that are discoverable. It applies to grounds in validity that are raisable after a skilled searcher does a reasonably diligent search, right? Precisely. What if anything would you have us say, let's assume we could agree on what the discoverability test is, do we then need to go on and say something about what is the raisability test? What does that mean? For this case, I don't think you need to. For one thing, I think that's a lot murkier issue because the grounds can be very different from one another. Even the two grounds in our case are very different. You have a three reference combination on the one hand, and on the other hand, you have a published application that cites to a provisional that contains additional disclosure that was necessary for the ground. And so, to have a one-size-fits-all standard for discovering a ground seems a little harder to me than for discovering a reference. And so, I think in this case, it's so clear from our standpoint that the individual references, the three we've talked about, were not found that it's sufficient to decide that. If I'm hearing you correctly, you're saying we don't have to trouble ourselves with what the standard is for grounds being raisable here because you don't think that the references were discoverable here. Is that your position? Right. Of course, if you disagree with that, then maybe we would then encourage you to go… Do you have anything helpful to say? Yeah. If hypothetically, we thought that the grounds here or that the references here were discoverable, can you begin to articulate what the legal test would be for whether grounds are raisable? Yeah, I think whether grounds are raisable would require certainly more than discovering a reference. And so, rather than just a quick scan and seeing that it's potentially relevant, I think there's got to be a line between the standard for discovering a ground and the obviousness concepts that are sometimes conflated with it. I think in some of the briefing and at the district court, I think some of those issues got blurred a little bit. Did you make what I'll call a backup argument, which would be even if all these different references, Kotkin, Raymond, Koji, were indeed discoverable, there's still a second problem, which is that there's no evidence here that, I don't know, a skilled searcher or someone else or a skilled artisan would have reasonably figured out how to create the very ground that you wanted to assert in this litigation. I don't recall you making that, what I'll call a backup argument. We definitely did for the Kotkin ground because the district court ruling did not even address the Kotkin provisional, which is necessary to complete the claim charge. Aside from the Kotkin provisional question, I don't recall you making this other argument that we're now discussing. Yeah, I think that I don't recall the type of argument that you just described. Even for the Kotkin, Wilner, Koji, and Raymond ground, Raymond is a very different type of argument than the others because it's brought in for a particular purpose that one skilled in the art would appreciate, a person of learning skill would appreciate, but a skilled searcher is a different person who doesn't have the same knowledge. It's a hypothetical. What if a searcher who is deemed to be a skilled searcher does a diligent search and then finds all the references except for Raymond, but finds a perfectly good different reference that is totally interchangeable with Raymond. And then it turned out in order to find Raymond, the searcher had to do a supplemental search. But would it even matter that Raymond wasn't found if a perfectly excellent stand-in substitute for Raymond had been found in that initial primary search? Then in that sense, the need for doing the supplemental search and needing to find the particular Raymond reference needle in the overall haystack of prior art references seems to be kind of unnecessary. What do you think? Well, the devil, I've found from this case, the devil is in the details. I mean, you look at these cases and clearly the supplemental search here was purely to find Raymond. I know, but right now we're not talking about the facts of this case, we're talking about my question. Yeah. Going to something else. I think the question is the reference that's in the ground. I guess my gut instinct would be that you wouldn't be a stop just because somebody could find something else that's arguably cumulative. But I think you'd need to know all the facts on the table to really make an informed decision on that. Just a quick question on your mandate rule argument. I'm not sure if I understand it. What are you saying the district court got wrong? Well, that may be two different questions, but the mandate question has to do with in the ruling, the court said that there was a deficiency in the record and held it against Valve. It says, in the attempt to cure this deficiency, Ms. Williams' declaration, Kotropi has asserted all this stuff. But there's a deficiency in the record supposedly from the land and IP search, and once again, the district court held it against Valve, whereas the first time we were here three years ago, there was a hole in the record with respect to collective mines, and they held it against Valve. I thought the argument you were making to us now was that the district court reopened what you considered a settled question about whether some of these references were in fact actually found by your pre-petition search. That's correct. There's two prongs of our mandate argument, and that's the other prong, is that when it was up here before, land and IP search was already a record. It was discussed during the appeal, and this court's ruling said that land and IP search discovered it. It's an uncontroverted fact. It's never been controverted. But we did send it back with instructions that the district court should decide whether to reopen discovery and even reevaluate whether there's any relevance, I think, to that pre-petition search. Didn't all of that make it within the scope of our mandate for the district court to potentially make a factual finding on what you actually found in the pre-petition search? Well, you're right. The word was relevance. The relevance of land and IP search. The search hasn't changed. It was done 12 years ago. There was some modified search strings where the district court got involved and changed some things around that seemed to be reverse engineering the search strings in hindsight as well. But in our impression, that's not part of the relevance of the search. That's actually going in and trying to kind of change and modify the search strings to get a result when you already know what the target reference is. Thank you. Okay. Thank you. Let's hear from the other side. Good morning, Your Honor. May it please the Court. My name is Greg Tampkin, and I'm here on behalf of Ironburg Inventions. Could you start with standard of review and tell us, you know, if to the extent there are fact questions, what pieces of this inquiry are questions of fact? That's a great place to start, Your Honor. This is a clear error standard here. This court determined the issue, determined that the judge needs to apply the skilled searcher test. The court . . . Federal estoppel generally, is that a question of law? It can be decided as a matter of law by the court, but it is a question of fact. Ultimately, the question in this case is what a skilled searcher conducting a reasonably diligent search could be expected to discover. That's a fact, fundamentally a fact question. If those facts are such that the skilled searcher could reasonably have been expected to discover the particular references in question, then the matter is decided. So, this is primarily a fact question. Obviously, I agree that if the skilled searcher test is something different than virtually every court who has considered it has found, then that test fundamentally is a legal question, but the application of that test is really what happened here. I think I may be confused by your answer. Are you agreeing that there are some questions of law implicated in this appeal that we reviewed de novo? No. I am saying that . . . What about what is the meaning of discoverability of a reference? That's not a question of law? Well, that's the skilled searcher test, and the skilled searcher test, I think, is established. This court has not actually articulated it, but I think that skilled searcher test, which is what this court remanded for the judge to apply again, is certainly the legal rubric. Discovery is not just including it in a 10,000 search result. You agree with that? Sometimes, but primarily, yes. If you search a classification, if you get 10,000 references, I would agree, Your Honor, but that's not what the skilled searcher test is. The skilled searcher test is considering the factual question of what a skilled searcher would find. There's a lot of ways to do that. There's classification searches. There's keyword searches. There's actually a case, the Boston Scientific case that's mentioned in our brief, which is it was well known in that . . . the expert testified it was well known in that case that I think it was a company called Olympus was very prolific in that area of the prior art, and in that case, that may be enough to simply search the Olympus references as an assignee. That may be the way to find it. A skilled searcher would do a lot of different things. That's what the factual question is, and I don't think this court should be saying it's this test or that test. Rather, the test is already articulated as . . . from this . . . go ahead. Could we just get to Kotkin? Sure. It looked to me that the district court believed that because Kotkin and Koji were found in a couple of different class subclass classifications, that as a matter of law, therefore, they were discoverable by a skilled searcher doing a diligent search. And it turns out the size or the pool of references in that combined class subclass was 26,000. And I think I just heard you say earlier that 10,000 is way too many. So could you respond to my concern that 26,000 is also too many to say as a matter of law any reference located in that 26,000 pool is discoverable? I think factually that's not what happened, Your Honor. Certainly in the classification there was evidence, I think for Koji, that there was 26,000. But then there was evidence that the court considered of this keyword . . . Start by Kotkin. Kotkin, there is also separate evidence, but the same searches . . . No, no, no, no. Don't go back to Koji. Footnote 8 is very explicit about narrowing the Koji searches down. Where does that narrow the Kotkin search down? The same searches are available. Where does the district court say Kotkin was considered and would have been found under the same searches? I don't think that is explicitly said. The same searches . . . Why isn't that clear error? We don't know if the district court concluded that Kotkin also would have been found, particularly the provisional, with those same searches. You say of course they would have, but the district court made no factual finding on that whatsoever. All we know on Kotkin is it was included in the 26,000 group. The district court included the cover page in its finding of Kotkin. The abstract is contained right there. The abstract discusses a game controller, which is one of the same terms that the court has . . . As far as we can tell, the district court never relied on any whittling down of the classification pool in which Kotkin was present. Didn't say, well, then you do a certain set of search terms that a skilled searcher reasonably would have used, and voila, now we've really confined down the scope of the pool to just a manageable subset of references. The district court never said anything like that, and as far as I can tell, your argument below was never premised on, okay, here's the class, subclass, now the skilled searcher would have used these particular search terms, and now we don't have thousands and thousands of references. We just have maybe dozens and dozens of references. Am I missing anything here? I think you are correct with your statement that the argument down below was not necessarily focused on . . . our argument down below was not necessarily focused on Val's references because we couldn't do discovery, but it was focused on our expert's references, but ultimately the judge said, I'm going to start with where this court instructed, which is go back, consider . . . I'm sorry. I just wanted to let you know, I didn't quite follow anything you just said right there. I'm sorry. But except for the fact that what I said seems to be an accurate reflection of what the district court did and how you argued this below. We argued primarily based on the searches that were performed by Cardinal IP . . . On the classification search, just at that level without actually doing any kind of search . . . No, no, no. We argued on the classification . . . there was a whole series of searches. We argued on the classification searches and we argued on the keyword searches. So for Kotkin, where did you say a skilled searcher would have used these particular search terms in this particular classification and therefore would have found Kotkin? Both search 34 as well as search 68. There were either 11 or 12. Where did the district court use that in its analysis for finding Kotkin discoverable? The district court did not necessarily say that it was using . . . I assume the district court did not. Okay. Okay. Now, where in your briefing below did you say, this is how a skilled searcher would have found Kotkin? Not only would have looked at this classification, but then would have performed . . . would have used this particular set of search terms and then would have ended up with this particular subset of references in which Kotkin was present. It was the entire argument with respect to search 33 and 34. Well, 34 was the citation search? 34 was a classification and a keyword search. But these are with respect to your cardinal IP search, not the Landon IP. Correct. And the district court relied on Landon IP, right? That's correct. So just talking about Landon IP, as I understand it, you never made an argument about when you look at the Landon IP search for these various 11 classification searches, here are the search terms you would have used, and that's how you get to Kotkin. I don't believe you made that argument on remand, correct? Arguments were really more about cardinal IP. That is correct. And the cardinal IP, we know you tried to do a citation search, which the district court rejected, correct? That was search number 30. Then we . . .  34 was not just a citation search. It was a keyword search as well. Is that the supplemental search? No. And search 68 is also a classification. The search string 34 was premised on using search words gained from the citation search, as I understand it. That is an assumption that an expert made, but that is not necessarily correct. And we specifically went back, and that's the Hammeter Declaration, we specifically went back to make it clear that the search 33 and 34 . . . The point remains is that we're talking apples and oranges right now. You're talking about cardinal IP search. The district court relied on the Landon IP search. The Landon IP search analysis stops at just the classification. For Kotkin. It does stop at . . . We don't know if the judge considered those other references. Footnote 8 on page 13 of the district court's decision where he talks about how the Kochi search was narrowed from 26,000 to a much, much smaller number. Is that referring to the Landon search? That is referring to the Landon search. It's referring to the . . . Are these keyword or however you want to say in searches to narrow Kochi down? That was done in the Landon search for Kochi. Yes, Your Honor. Was it done in the Landon search for Kotkin? And did the district court rely on that narrowing for Kotkin? I don't see it in his opinion. I don't think it was done for Kotkin. I think Kotkin is only the 26,000. I don't think it was done for Kotkin in the sense that these are the searches. We don't know what Landon IP . . . we don't have those search results. We don't know what they are. But that's the flaw in the analysis, and that's why this analysis is incomplete with respect to Kotkin. Well, I don't think . . . I mean, this makes clear that Kochi would have been found, and I think you're on firm ground here. On Kochi. But we have no idea what the analysis for Kotkin is, except he just references them both together. But there's two separate references. There are two separate references. I agree. And the issue is, could those same search terms been applied, or is that . . . Well, if he had said that, you'd be on much firmer ground. If he had said, and the same search terms would have resulted in Kotkin being in a much We don't know that he made any of those findings. And so, even if it's a clear air standard, if he didn't make a finding that a skilled searcher would have found Kotkin, then his whole estoppel analysis is flawed. Well, I don't think the whole estoppel analysis is flawed, because he made the finding with respect to the Wilner-Kochi-Raymond reference. But we'll get to Raymond. You have problems with Raymond, too. So, I don't think you better rely too much on that. But the Kotkin analysis is flawed. I don't think the Kotkin analysis is flawed, because there's other ways. Even if you say the judge didn't find it, you can't look at the . . . anyone can look at the . . . No, the judge has to make the finding. If you're saying that a skilled searcher finding is a factual finding, then the judge has to make it for us to have something to review. And he absolutely did not say, beyond the 26,000, that Kotkin was found. That's just clear error. So, on the Kotkin ground, it has to go back. I don't think so. I think there's alternative grounds that this court can find, which is specifically on search 34 or search 68. Search 68 . . . On Kotkin and Kochi, too, I think the district courts seem to make a finding that in their pre-petition search, they actually did find . . . must have found those two references. Isn't that what the district court says at 813? I don't know what evidence there is to support that finding. I don't think that's what . . . I think what the court said is a skilled searcher conducting a diligent search at the relevant time reasonably could have been expected to, and likely did, discover both Kotkin and Kochi. Doesn't he go on to say it must have been among the references identified? During the March 2014 search? Must have been on the references because it's in the classification, not that it was found or not found. It would be clear error to make that finding, since we don't know . . . there's no evidence to support that in their March 2014 search, they actually did find Kotkin and Kochi, correct? There's no evidence to find that they did find Kochi or Kotkin, and the court did not find that they found Kochi. If it did, that would be clear error. Okay. I don't know that if it did, that would be . . . well, it's simply irrelevant. So how about Raymond? The Raymond reference was found only by doing a supplemental search. Yes, Your Honor. And you have a Mr. Hameter that acknowledged that the supplemental search was conducted because a particular reference that you were hunting for had not been found in the primary search, and so that's why they did the secondary search. Is that correct? I don't think that's correct, Your Honor, but . . . Well, isn't that what Mr. Hameter acknowledged? Mr. Greenia believed that to be the case, but Mr. Greenia didn't know, and there was a supplemental . . . but the facts are . . . Mr. A7473, I mean, this is a transcript of Ryan Hameter. Is it your understanding that the supplemental search was conducted because there was another reference that had not yet been found? Answer, correct. I apologize. I thought it was Mr. Greenia. That's pretty clear. So it wasn't because, oh, the original search didn't come up with a particular limitation, and so we needed to do a supplemental search to find a reference that would match up with that one missing limitation. That wasn't the explanation for the supplemental search. It was because you put these guys on a mission to find particular references, and you wouldn't tell them the name of it, and so then they tried to find them, and then in the original search couldn't find it, and so you sent them off to do a second search. Actually in the original search, they did find it, but that was using the forward and backward search. But the point is, Your Honor, that this was considered by the district court as to whether or not a single supplemental search is something that occurs, and footnote 17 of the court's – Right. But now we have the reason why. I mean, yes, supplemental searches occur all the time, but there's a reason why they occur all the time, and the reason why they occur all the time is because maybe the primary search was inadequate with respect to a particular limitation or something. Here it's because – not because of that common flaw with the primary search, but it's because you kept them hunting for the Raymond reference. I don't think that's right, Your Honor. I think here, presumably Mr. Hamender says it was not found or he read it. There's nothing in the record that suggests that the original Greenia search failed to find a prior reference that matched up with the flexible, resilient PADL limitation, right? There's nothing in the record that suggests that. Nobody went through and said this is –  So that's why it feels a little hindsight-y what happened here when you unleashed Mr. Greenia to go out and find a reference to that specific limitation in a supplemental search. I don't think it's hindsight to do a supplemental search for whatever reason it is. And this one, the supplemental search, was –  That can't be true. If the attorneys come in and say your search didn't pull up this reference, go do another search that pulls up this reference, that would be wrong, right? It wouldn't meet the standard. If an attorney says go find this reference and you didn't find this, that's not what happened. No, that's not what I'm asking. If the attorney said create search terms that's going to find this reference. Of course, that would be the classic hindsight, but this is a situation where you need to do a search on the key element of the patent that's new in this case, which is the elongated member that is inherently resilient and flexible. That's what the search – Is there any evidence that here a supplemental search would have been conducted, that a diligent, skilled searcher, after doing the 40 hours and returning all the references that were returned by that one, wouldn't have decided I'm done? What evidence is there that they would have in this case gone on and done more? The evidence is simply that both Mr. Greeney and Mr. Hammeter testified that a supplemental search of this nature is very common, a single supplemental search. But not that it was actually necessary in this case? What at least one of them testified is the reason was the prior one didn't locate a  That would be Mr. Hammeter because Mr. Hammeter was aware of the type of search that was being done, but in reality, this is the type of supplemental reference that was done. There is evidence from the fact that CMG also did this type of a search. In the supplemental search, do we know why Mr. Greeney used the search term key? Well, if you look up a thesaurus, key is a synonym for button, which is, you know, these are video game controllers with buttons. Another reason would be that Mr. Greeney testified – Well, was any of this presented to the district court below? Sure. Here's why Mr. Greeney used the word key. It's not because the word key is all over the Raymond reference, and so we were, you know, self-directing ourselves to find the Raymond reference. It's because a diligent, skilled searcher would have chosen the word key for the following reasons. Mr. Greeney testified through declaration that he would look at the patent and use the key terms in the patent, come up with synonyms. Wilner is actually a reference in the patent that he would have looked at. Wilner actually talks about a simulated keyboard, if you will, on the back of a game controller, so that would be something. But the testimony was simply, I used the patent and the references on the patent to come up with keywords. Was the word key used in any search in the initial 40-hour search? I apologize, Your Honor. I don't know. Hypothetically, if I were to agree with the appellant's arguments about error here, should my vote for a disposition be to vacate and give you another chance to meet your burden, or should it be a reversal and say, let's just go to trial on invalidity, they're not a stop? Well, I think there's a couple of things. First of all, there are different references that are asserted against different claims, and so it depends on what the finding is. Let's just assume I agreed with them on everything, just to make it simple. Then I think that the court needs to consider the other references, because the court decided not other references, other evidence. The court didn't consider a lot of evidence and said, I don't need to consider the additional cardinal IP evidence on Kotkin, Koji, et cetera, because I can just consider the land and IP references. And so I think if this court were to reverse and find that there's clear error, then I think What about Raymond? Is there any other, if we find that the supplemental search is invalid because of hindsight and because he was directed to do it, is there any evidence, and the district court threw out the other part of the search on Raymond, is there any other evidence that would support Raymond being discoverable? The evidence is that Raymond came up in the supplemental search. Right. And so if we find that is a clear error, then Raymond at least has to go forward as a ground for obviousness. If Kotkin does, if the court does that. Well, Kotkin is separate from Koji Raymond, right? Right. So if Raymond's OK that they wouldn't have found Raymond, they can go forward with the Koji Raymond grounds, can't they? Kotkin is a different. If this court finds that Kotkin was found. No, they're two separate grounds. But they don't cover all the, they don't cover all the claims. I understand, but Kotkin is different than Koji Raymond. So if we reverse on Raymond outright, then at least the claims covered by the Koji Raymond grounds are not a stopped. Correct. We still have to deal with Kotkin and whether that's a reverse or whether the district court gets another shot at explaining why Kotkin was discoverable. Correct. But it would be irrelevant because they covered different claims. And so there's still infringement of Claim 4, I think, or Claim 18, depending upon how the court finds. And therefore, there'd be no reason for the court to move forward. There's already a finding of infringement. And so if. I don't understand that. If they're allowed to move forward, oh, because there's some of the claims aren't covered by the infringement. And the infringement judgment doesn't rest, it's not a portion between different claims. It's a general verdict. Correct, Your Honor. Correct, Your Honor. What about the damages? There's just one overall damages award.  Wasn't that problematic? What's that? No, go ahead. Sorry, isn't that a problem? If we were, let's say, can we stick to affirming the damages verdict with no further proceedings if it's based on, let's say, five infringement finding or infringement of five claims? There was no argument that the damages are based on Claim 18 versus Claim 4 versus Claim 7. It was a, if there's infringement, what are the damages? Okay, thank you. Thank you. Your Honor, if I have any time remaining, just a couple of quick points. Okay. On that last point, we've addressed this in our brief, but actually all of the claims are in play for both grounds because of the remand. The court reopened discovery, allowed expert declarations on merits discovery or merits briefing on invalidity, and Ironburg submitted a declaration from a new invalidity expert and covered all claims with all grounds. And so we rebutted that with all claims and all grounds. So I think that discussion's a moot point. I think that even if only one of the grounds gets remanded or reversed, that all claims are in play. There was an argument in the red brief that for an alternative grounds for an affirmance on Kotkin, relying on the Cardinal IP search and not the Landon IP search. And I think the response from you would be, well, Mr. Greenia's search, or at least the citation search, was thrown out with respect to remand and the logic would necessarily also apply for Kotkin. But then Mr. Hammeter came in with a supplemental declaration saying, well, if I, Mr. Hammeter, I did kind of a repair job on Mr. Greenia's flawed search and that repair job on the flawed search reveals that, yes, you know, once you make the corrections, you still find Kotkin. What's your response to that? There's a lot of responses to that. The one that's comprehensive. You've got 20 seconds. I know. Of all references, it's a fruit of the poisonous tree thing. There were IDS's filed information disclosure statements on grandchildren of the 525 patent family. They brought in Kotkin, Koji, and Raymond. And Hammeter, all he did was he went back and cut out the references, the prior references that were found that were dated after the cutoff date. But those middleman, grandchildren, family members already brought those references in. You can't take away all the taint that occurred at the very beginning when he did the forward and backward searching and looked at all the art that wasn't found. I would think your argument would be this was way out of time. Oh, yeah. There was a limited window for anybody to do some limited discovery. And then what happened here was so late in the briefing that it doesn't – it's outside that window of time to bring in new evidence. We moved to strike or to get a deposition and were turned down. One other comment on his second declaration, Hammeter's second declaration, based on his second supplemental search he did, the court took judicial notice of a classification that is not on the face of the Raymond patent. The court also took judicial notice of the Raymond patent. There are two different classifications. And if you look at the supplemental search report, Appendix 6222, there's no reason why the supplemental search would have searched this H01, H02, 00, 02, 18, 22, if 00 was a superset like equivalent to a wild card. It isn't. So there's a big disconnect in his second declaration on Raymond as well. Okay. Thank you very much. The case is submitted.